[Cite as *Solon v. Hrivnak*, 2014-Ohio-3135.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 100411

## CITY OF SOLON

PLAINTIFF-APPELLEE

vs.

## CHRISTOPHER HRIVNAK

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Bedford Municipal Court
Case No. 12 TRC 04040

**BEFORE:** McCormack, J., E.A. Gallagher, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** July 17, 2014

**ATTORNEY FOR APPELLANT**

Bryan Byrne
5403 Detroit Avenue
Cleveland, OH 44102


**ATTORNEY FOR APPELLEE**

Lon D. Stolarsky
Prosecutor
5333 Northfield Road
Suite 250
Bedford Heights, OH 44146

TIM McCORMACK, J.:

{¶1}   Defendant-appellant, Christopher Hrivnak, appeals from a judgment of the Bedford Municipal Court that convicted him after a jury trial of operating a vehicle under the influence ("OVI").   He claims his conviction was not supported by sufficient evidence and was also against the manifest weight of the evidence.   Finding no merit to the appeal, we affirm the court's judgment.

## Evidence Presented at Trial

{¶2}   Hrivnak was charged with OVI and a marked lane violation.   He pled not guilty to these charges, and the matter went to a jury trial.   At trial, Officer Keith Kulak, a 13-year veteran with the city of Solon police department, testified.   On June 11, 2012, around 8 p.m., while driving his police vehicle westbound on Route 43, Officer Kulak observed a 1977 black Lincoln weaving in traffic.   The Lincoln was two vehicles ahead of the officer and traveling in the same direction.   Officer Kulak saw the Lincoln weave to the left outside of its lane of traffic and, when it returned to the right lane, almost struck the curb.   After watching the Lincoln weaving to the left a second time, Officer Kulak activated his lights and siren and initiated a traffic stop.

{¶3}   The driver of the vehicle, Hrivnak, explained he was driving in the erratic manner because "the car was a big car."   When Officer Kulak asked for proof of insurance, Hrivnak initially handed him the vehicle's registration instead, but later produced the insurance card.   During this initial contact, Officer Kulak noticed a strong

odor of alcohol emanating from the driver's side of the vehicle. In addition, Hrivnak's speech was "thick tongued" and slightly slurred. Hrivnak, however, denied to the officer that he had consumed any alcohol that night. Because his denial was inconsistent with Officer Kulak's observations, Officer Kulak asked Hrivnak to exit his vehicle to perform the field sobriety tests.

{¶4} Officer Kulak testified he was trained on the field sobriety tests standardized by NHTSA (National Highway Traffic and Safety Administration) and had administered the tests for 13 years. He administered three tests on Hrivnak.

{¶5} The first test the officer administered was the Horizontal Gaze Nystagmus ("HGN") test. In this test, the subject would be asked to follow, with the eyes, a stimulus such as the top of a pen or a finger, and the officer would look for an involuntary jerking of the subject's eyes. While administering the test, Officer Kulak observed "a lack of smooth pursuit" in Hrivnak's eyes, which was a clue of impairment. He also observed in both of Hrivnak's eyes "distinct nystagmus at maximum deviation," also a clue of impairment. The officer then looked for "nystagmus prior to the eyes reaching 45 degree." For this portion of the test, because Hrivnak kept turning his head, the officer could not complete the test. Based on his observations, the officer found Hrivnak to exhibit six out six clues of impairment on the HGN test.

{¶6} The officer then administered the one-leg-stand test. He instructed Hrivnak to stand with his feet together, keep his arms down at his sides, raise one foot six inches off the ground with his toe pointed out, and count out loud from 1,000 on, for

30 seconds. Hrivnak raised his right foot and counted to three, but lost his balance and stumbled back. When instructed to continue, he raised his foot, counted from three to seven, but lost his balance again. He raised his foot for a third time and counted from seven to ten, but lost his balance again. Officer Kulak testified the repeated loss of balance indicated impairment.

{¶7} Officer Kulak then administered the walk-and-turn test. He first instructed Hrivnak on how to perform the test: take nine steps from the starting position, heel to toe, then turn around and take nine steps back to the starting point, all the while counting the steps out loud. Hrivnak was unable to stay on the starting position, losing his balance and stepping off twice while the officer gave him instructions. He could not walk heel to toe on steps three through nine. On the second set of nine steps, he did not walk heel to toe on any of the steps and he stumbled to the right on the sixth step. Officer Kulak testified that Hrivnak's poor performance on this test also indicated he was impaired.

{¶8} Officer Kulak testified that because Hrivnak's performance on all three tests indicated impairment, he placed Hrivnak under arrest for OVI and transported him to jail. While there, Hrivnak refused to take the breath alcohol concentrate test. The officer also testified he smelled the odor of alcoholic beverage in his police car afterward, although that fact was not noted in the police report.

{¶9} On cross-examination, Officer Kulak acknowledged that while he smelled alcohol emanating from the driver's side, he could not be certain it was indeed from

Hrivnak's person; neither did he smell alcohol from Hrivnak when he administered the nystagmus test. Officer Kulak also acknowledged the light drizzle that night and the distractions from the passing traffic could be factors affecting Hrivnak's ability to follow instructions. The officer in addition acknowledged Hrivnak's physical condition — 50 pounds overweight — could affect his performance on the one leg stand.

{¶10} Dr. Raymond Salomone, Hrivnak's physician, testified that he treated him for sleep apnea. Around the time of the incident, Hrivnak was prescribed Ativan, a drug that came with a caution regarding operating a vehicle and concurrent consumption of alcohol and its side effect included dizziness, sedation, and unsteadiness.

{¶11} Hrivnak, a 57-year-old school bus driver, testified on his own behalf. In addition to sleep apnea, he also had edema in his legs, which sometimes flared up and required the use of a walking cane. He testified that, around the time of the incident, the edema in his legs was "moderate" and he was having difficulty standing and walking.

{¶12} Hrivnak testified that, on the day of the incident, he had gone to see a doctor for a routine medication. Later, he mowed the grass. After dinner, around 8:00 p.m., he decided to go to the health club to swim and to soak in the hot tub to help ease the edema. He testified that, before he was pulled over by the police, his seatbelt kept unbuckling and he had to reach back to put the seatbelt back on. He stated that he had problems with performing the field sobriety tests because he was experiencing anxiety and confusion, and the edema and swelling in his leg was the reason for his poor performance on the walk-and-turn test. As to the Ativan, he could not recall whether he

had taken the drug that day. He testified that he refused the Breathalyzer test because he had concerns about the test's reliability. On cross-examination, however, he was unable to explain the odor of alcohol in his vehicle detected by Officer Kulak; he stated that the officer must have been mistaken.

{¶13} Two videos were played for the jury. One depicted Hrivnak's performance on the field sobriety tests, and the other depicted the booking procedure in the Solon police station, which showed Hrivnak was cooperative with the officers during the procedure.

{¶14} After trial, the jury found Hrivnak guilty of both OVI and marked lanes violation. He was fined $100 dollars and court costs. Hrivnak appeals the judgment, claiming his conviction of OVI was not supported by sufficient evidence and was against the manifest weight of the evidence.

## Sufficiency of the Evidence

{¶15} When reviewing a challenge of the sufficiency of the evidence, a reviewing court examines the evidence admitted at trial and determines whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. A reviewing court is not to assess "whether the state's evidence is to be believed, but whether, if believed, the

evidence against a defendant would support a conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).

{¶16} R.C. 4511.19 (A)(1)(a) defines the OVI offense. It prohibits a person from operating a vehicle "under the influence of alcohol, a drug of abuse, or a combination of them." Hrivnak claims there was insufficient evidence to find him guilty of OVI because his poor performance on the field sobriety tests can be attributed to his medical and physical condition.

{¶17} The courts have noted that field sobriety tests are not a necessary factor in an OVI conviction because, otherwise, "those with certain medical conditions would have a free pass to drive drunk or under the influence of a drug of abuse." *State v. Strebler*, 9th Dist. Summit No. 23003, 2006-Ohio-5711, ¶ 17; *State v. Stephenson*, 4th Dist. Lawrence No. 05CA30, 2006-Ohio-2563, ¶ 19; *State v. Rouse*, 7th Dist. Belmont App. No. 04BE53, 2005 Ohio 6328.

{¶18} Rather, the courts, including this court, have recognized that, to prove impaired driving ability, the state can rely not only on coordination tests such as the field sobriety tests but also on physiological factors such as slurred speech, bloodshot eyes, and the odor of alcohol. *State v. Clark*, 8th Dist. Cuyahoga No. 88731, 2007-Ohio-3777, ¶ 13; *State v. Simms*, 9th Dist. Summit No. 23957, 2008-Ohio-4848, ¶ 6; *State v. Holland*, 11th Dist. Portage No. 98-P-0066, 1999 Ohio App. LEXIS 6143 (Dec. 17, 1999).

{¶19} Here, Officer Kulak observed Hrivnak's vehicle twice weaving out of its lane and almost hitting the curb when it returned to the lane. He also noticed a strong

odor of alcohol emanating from the driver's side of the vehicle. Hrivnak's speech was "thick tongued" and slightly slurred. In addition, the officer found him to exhibit six out of six clues of impairment on the HGN test; he lost balance three times on the one-leg-stand test; and he performed poorly on the walk-and-turn test. Hrivnak claims his inability to perform the latter two tests can be attributed to his medical and physical conditions. However, even without taking into account his performance in these two tests, Officer Kulak's testimony regarding the HGN tests and his observations of the erratic driving, slurry speech, and the strong odor of alcohol from the driver's side, if believed by the jury, was sufficient evidence from which the jury could conclude Hrivnak was driving under the influence of alcohol. The first assignment of error is without merit.

### Manifest-Weight Claim

{¶20} While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion. *Thompkins*, 78 Ohio St.3d at 390, 678 N.E.2d 541. Unlike challenges on sufficiency of the evidence, which raise a question of law, manifest weight challenges raise factual issues. When a defendant asserts that his conviction is against the manifest weight of the evidence, the court,

> "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial

should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."

*Id.* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In evaluating a manifest-weight claim, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶21} Hrivnak raises essentially the same argument under his manifest-weight claim as he does in his sufficiency claim. Hrivnak argues he offered alternative explanations for certain clues displayed in the field sobriety tests and the jury lost its way by giving undue weight to the officer's testimony.

{¶22} Hrivnak offered only his own testimony to support his claim that the results of the one-leg-stand test and the walk-and-turn test were skewed due to his medical and physical conditions. Dr. Salomone only testified that Hrivnak was diagnosed with sleep apnea. Even assuming Hrivnak's poor health undermined the reliability of these two tests, his performance on these two tests was not the only evidence in this case. Although he attributed his erratic driving to the size of his vehicle and a malfunctioning of his seatbelt, he offered no evidence to refute the remaining evidence presented — the officer's observation of slurry speech and odor in the driver's side of the vehicle and the clues on the HGN test.

{¶23} The jury was not persuaded that Hrivnak's medical and physical conditions accounted for all the indications of impairment observed by Officer Kulak. Having reviewed the evidence, along with the reasonable inferences that can be drawn therefrom,

we cannot conclude that, in resolving the conflicting testimony, the jury lost its way and created such a manifest miscarriage of justice that a new trial should be ordered.

**{¶24}** Hrivnak's conviction for OVI was not against the manifest weight of the evidence. His second assignment of error is without merit.

**{¶25}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Bedford Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

EILEEN A. GALLAGHER, P.J., and
MELODY J. STEWART, J., CONCUR