[Cite as *Cleveland v. Clark*, 2024-Ohio-4491.]

## COURT OF APPEALS OF OHIO

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| CITY OF CLEVELAND, | : | |
| Plaintiff-Appellee, | : | |
| v. | : | No. 113546 |
| LAMARCO CLARK, | : | |
| Defendant-Appellant. | : | |

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 12, 2024

---

Criminal Appeal from the Cleveland Municipal Court
Case No. 2022TRC012227

---

### *Appearances:*

Mark Griffin, City of Cleveland Director of Law, Aqueelah A. Jordan, Chief Prosecutor, and Margaret Scott, Assistant City Prosecutor, *for appellee*.

Law Office of Victor O. Chukwudelunzu, LLC and Victor Chukwudelunzu, *for appellant*.

EILEEN A. GALLAGHER, P.J.:

{¶ 1} Defendant-appellant, Lamarco Clark ("Clark"), appeals from his convictions for driving while under the influence of alcohol and failure to stop at a stop sign, following a bench trial. For the following reasons, we affirm.

**Factual and Procedural History**

{¶ 2} This case originated with a motor vehicle accident that occurred on August 10, 2022 which involved Christina Crandell ("Crandell") and Clark, at the intersection of East 99th Street and South Boulevard in Cleveland, Ohio.

{¶ 3} The City of Cleveland ("the City") alleged that Crandell drove her automobile east on South Boulevard towards the East 99th Street intersection where she had a stop sign for her lane of travel. The City further alleged that Crandell came to a complete stop at the intersection, looked both directions for traffic, observed no oncoming vehicles and proceeded into the intersection. Clark, who was simultaneously proceeding south on East 99th Street towards the intersection of South Boulevard, allegedly driving while intoxicated, failed to stop at the stop sign and struck the front driver side of Crandell's vehicle.

{¶ 4} Officer Kortez Johnson ("Johnson") and Officer Matthew Woznicki ("Woznicki"), of the Cleveland Division of Police, were dispatched to the scene of the automobile accident. The officers spoke with Clark, Crandell and witnesses and inspected the property damage, the accident scene and the position of the vehicles after the accident. Pursuant to the officers' investigation, a complaint was filed against Clark on August 21, 2022, charging him with failure to stop at a stop sign in violation of Cleveland Cod. Ord. ("C.C.O.") 431.19, a minor misdemeanor, and driving while under the influence of alcohol or drugs ("OVI") in violation of C.C.O. 433.01(A)(1), a misdemeanor of the first degree. On September 7, 2022, Clark entered a not guilty plea to both charges.

**{¶ 5}** The Cleveland Municipal Court conducted numerous pretrial hearings and, on December 20, 2022, Clark waived his speedy trial rights. On April 12, 2023, Clark filed a motion to suppress evidence arguing the arresting officer lacked probable cause to arrest Clark for OVI. The City filed a brief in opposition and Clark filed a supplemental motion. On June 1, 2023, the trial court conducted a hearing on Clark's motion to suppress and heard testimony from Officer Woznicki.

## Suppression Hearing

**{¶ 6}** Woznicki testified that he has been a patrol officer for the Cleveland Division of Police for seven years during which time he had interacted with suspected OVI drivers on numerous occasions. Woznicki received annual mandatory training on traffic stops and was trained on the National Highway Traffic Safety Administration ("NHTSA") manual.

**{¶ 7}** Woznicki stated he was dispatched, on August 10, 2022, to the scene of an automobile accident at the intersection of East 99th Street and South Boulevard. Woznicki described the area as a four-way intersection, with South Boulevard being a one-way eastbound street with stop signs posted eastbound on South Boulevard and southbound on East 99th Street.

**{¶ 8}** Upon Woznicki's arrival at the scene of the accident, a fire truck and an EMS vehicle were present. Woznicki observed numerous neighbors on the streets who informed him that Clark had been speeding and failed to stop at the stop sign. They further were discussing that Clark hit Crandell's vehicle, that Clark appeared

intoxicated and related that Clark tossed a beer can or alcoholic beverage from his car window. The EMS officer told Woznicki that Clark refused medical treatment and that he may have been intoxicated.

{¶ 9} Woznicki stated that the front end of Crandell's vehicle was totaled, that Clark's vehicle was positioned four to five houses south of the intersection and that both vehicles had sustained heavy damage.

{¶ 10} According to Woznicki, Clark attempted to walk away from the scene of the accident but Woznicki prevented Clark's departure so that he could question Clark about the accident. Woznicki stated he observed Clark "kind of swaying a little bit" and Clark provided incoherent answers. Woznicki further stated that when he asked Clark how the accident happened, Clark was unable to answer. Clark refused to engage in a field-sobriety test and, in response to that inquiry, Clark threatened to kill Woznicki stating, "If you try it, I will kill you." Woznicki detained Clark and placed him in his patrol vehicle. While both men were inside the vehicle, Woznicki smelled an odor of alcohol that the officer could not describe as either weak or strong. Woznicki further stated he observed Clark as "kind of slumped over" with slurred speech and glassy eyes. Woznicki concluded that Clark was intoxicated due to his demeanor, movements, glassy eyes and the smell of alcohol on his breath.

{¶ 11} Woznicki neither observed Clark's alleged erratic driving nor any traffic violation and that he learned how the accident occurred through oral statements from "other people involved" and "several witnesses on scene," who said Clark drove at a high rate of speed and failed to stop at the stop sign.

{¶ 12} According to Woznicki, the NHTSA manual instructs an officer administering a field-sobriety test to first ask if the suspect has suffered a medical impairment because the behavior of a person involved in a serious accident may mimic the effects of impairment from drugs or alcohol such as unsteadiness, slurred speech or incoherence.

{¶ 13} On June 1, 2023, the trial court issued a detailed judgment entry denying Clark's motion to suppress.

{¶ 14} On November 15, 2023, the trial court conducted a bench trial and heard testimony from Crandell, Johnson and Woznicki. Clark presented no evidence before resting.

**Crandell**

{¶ 15} Crandell testified that, on August 10, 2022, as she drove eastbound on South Boulevard, she stopped for the stop sign at the intersection of East 99th Street, looked both directions and saw no cars were coming and she then proceeded into the intersection. Crandell testified that the intersection was a four-way stop with stop signs positioned on each corner. Crandell stated then when her vehicle was in the middle of the intersection, she saw "something black coming out [sic] the corner of [her] eye, and [she] heard a horn" and she was struck by another vehicle on the front driver side of her vehicle. Tr. 8. Crandell stated the other driver ran a stop sign, although she conceded that she did not see the other driver until "something black caught the corner of [her] eye and a horn blew." Tr. 14.

**{¶ 16}** Crandell was transported by ambulance to a hospital from the accident scene. Crandell sustained bruising and swelling from the accident and her automobile was declared a total loss due to the extensive property damage.

**Officer Johnson**

**{¶ 17}** On August 10, 2022, Johnson, a patrolman for the Cleveland Division of Police for two and one-half years, arrived at the intersection of South Boulevard and East 99th Street, which is a residential area, and he observed two vehicles with significant, disabling property damage. Johnson testified that it was a four-way intersection with stop signs on each roadway. Johnson stated he observed Clark exiting the driver's side of his vehicle, an indication that Clark was the driver of that vehicle. Johnson testified that he interviewed Crandell, secured witness statements and inspected the vehicles to ascertain if the witness statements as to how the accident occurred correlated with the property damage. Johnson testified that Clark's vehicle was approximately 50 feet south of the intersection and Crandell's vehicle was stopped in the intersection.

**{¶ 18}** Johnson stated he observed Clark exhibit loud and belligerent behavior and Clark was detained and placed in the back of the zone car. Johnson further testified that once Clark was placed in the rear of the zone car, he smelled a strong odor of alcohol emanating from Clark and he noticed Clark's speech was not clear. According to Johnson, Clark refused to engage in a field-sobriety test at the accident scene or a breath-analysis test at the Bratenahl police station.

{¶ 19} Johnson testified about his training and experience as a police officer included detecting when an individual is under the influence of drugs or alcohol. Based upon Johnson's observations of Clark, he determined Clark was intoxicated and wrote Clark a ticket charging him with OVI.

{¶ 20} Johnson also testified that his training and experience as a police officer included processing an accident scene and determining the cause of an accident. Based upon the vehicles' property damage, the positioning of the vehicles after the collision and witness statements, Johnson concluded that Clark caused the accident when he failed to stop at the stop sign and issued Clark a ticket for failure to stop at a stop sign.

**Woznicki**

{¶ 21} Woznicki's trial testimony largely mirrored his testimony at the suppression hearing. Woznicki described his interaction with Clark as follows:

> As I was approaching [Clark], he appeared to be confused, or he was kind of swaying. He wasn't listening to my commands. I was trying to figure out how this accident occurred, and he failed to tell me how it happened, and then, at that point, he tried to walk through me to leave the scene of the accident. At that time, we detained him. He was trying to leave the scene of the accident.

{¶ 22} Woznicki stated he could not recall whether the odor of alcohol stemming from Clark was apparent outside the patrol car or later inside the police station. He further testified that he could not recall if Clark was unsteady on his feet when they arrived at the police station. Woznicki stated that Clark's belligerent behavior decreased once he refused the field-sobriety test.

{¶ 23} Woznicki transported Clark to the Bratenahl police station where the officer attempted to administer a blood alcohol test but Clark refused to cooperate.

{¶ 24} Woznicki testified that he received training in order to detect when an individual is impaired and he had investigated hundreds of motor vehicle accidents prior to the accident involving Clark and Crandell. Woznicki stated that because Clark refused to submit to a field-sobriety test, he had to rely on his observations to determine if Clark was impaired.

{¶ 25} Defense counsel questioned Woznicki about whether a field-sobriety test should be administered to an individual involved in a serious accident:

DEFENSE COUNSEL: Now, you did say — indicate that you were trained in NHTSA Manual, correct?

OFFICER WOZNICKI: That's correct.

DEFENSE COUNSEL: And part of that training indicates that if someone has been involved in a serious accident, you're not necessarily supposed to give them Field Sobriety Tests.

OFFICER WOZNICKI: Yes, I — that's part of it, but he — he was not injured to a point where he — he refused medical attention on scene. He wasn't — he was able to walk.

DEFENSE COUNSEL: And again, I respect you as police officer. However, you're not a medical doctor.

OFFICER WOZNICKI: Right.

DEFENSE COUNSEL: Okay. And sometimes people experience injury and still could not make statements after being in a serious accident that might not be, you know, the best decision, like, you know, denying medical care.

OFFICER WOZNICKI: Yes, that's correct, but —

DEFENSE COUNSEL:  Okay.

OFFICER WOZNICKI:  — also that's why we want to get a Breathalyzer done.

Tr. 54.

{¶ 26} At the conclusion of the City's case, Clark made a Crim.R. 29 motion for acquittal, which the trial court denied. On November 29, 2023, the trial court issued a detailed judgment entry finding Clark guilty of OVI and failure to stop at a stop sign.

{¶ 27} On December 13, 2023, the trial court sentenced Clark to 180 days in jail, suspended 160 days, and imposed a fine of $525.  Further, the trial court stayed the sentence pending Clark's appeal.

{¶ 28} On January 9, 2024, Clark filed a timely notice of appeal presenting these four assignments of error:

> Assignment of Error I:  The trial court erred to the prejudice of appellant, by denying appellant's motion to suppress evidence.
>
> Assignment of Error II:  Appellant['s] conviction for driving under the influence of alcohol, and operation of a vehicle at stop sign was not supported by sufficient evidence.
>
> Assignment of Error III:  Appellant['s] conviction for driving under the influence of alcohol, and operation of a vehicle at stop sign was against the manifest weight of evidence.
>
> Assignment of Error IV:  The trial court erred and abused its discretion in denying appellant's Rule 29 motion for acquittal.

**Legal Analysis**

**Motion to Suppress**

{¶ 29} In his first assignment of error, Clark argues that the trial court erred when it denied his motion to suppress. Specifically, Clark contends there was no credible evidence that he caused the accident nor that his driving was impaired. Clark argues that his unsteadiness and slurred speech may have been caused by his involvement in a serious accident. Clark contends the totality of the circumstances did not show probable cause to arrest him for OVI and, therefore, his convictions should be reversed.[1]

{¶ 30} This court reviews a trial court's ruling on a motion to suppress under a mixed standard of review.

> "In a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate witness credibility." *State v. Curry*, 95 Ohio App.3d 93, 96 (8th Dist. 1994). The reviewing court must accept the trial court's findings of fact in ruling on a motion to suppress if the findings are supported by competent, credible evidence. *State v. Burnside*, 100 Ohio St.3d 152, ¶ 8 (2003). With respect to the trial court's conclusion of law, the reviewing court applies a de novo standard of review and decides

---

[1] Officer Woznicki stated he utilized his body camera during the traffic stop and, during the suppression hearing, the City played the audio associated with Officer Woznicki's body camera for the court. At the suppression hearing, the City stated it would introduce as an exhibit a flash drive with the audio recording of Officer Woznicki's body camera footage. The body camera audio recording is not part of the record in this appeal. The parties do not argue any disparity between the suppression hearing testimony and the body camera audio recording, and we presume regularity in the proceedings below. *See State v. Rice*, 2011-Ohio-1929, ¶ 6 (8th Dist.) ("Absent a transcript or alternative record under App.R. 9(C) or 9(D), we must presume regularity in the proceedings below."). The municipal court's judgment entry denying Clark's motion to suppress references Clark's demeanor captured on video. We review Clark's first assignment of error absent the body camera's audio recording.

whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist. 1997).

*State v. Miller*, 2018-Ohio-4898, ¶ 22 (8th Dist.).

{¶ 31} Warrantless arrests in an OVI case are constitutional in Ohio when the officer had probable cause, at the time of the stop, to make an arrest. *Cleveland v. Bruner*, 2002-Ohio-6512, ¶ 10 (8th Dist.), citing *State v. Woodards*, 6 Ohio St.2d 14 (1966). Probable cause exists when, based upon the totality of the circumstances, the arresting officer had sufficient information at the time of the arrest, derived from a reasonably trustworthy source of facts and circumstances, to cause a reasonable and prudent person to believe that the suspect committed the offense. *Bruner*, citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *State v. Timson*, 38 Ohio St.2d 122, 127 (1974). "'In an OVI case, a finding of probable cause may be supported by the totality of the circumstances even absent the administration of a field sobriety test.'" *Bruner* at ¶ 11, quoting *State v. Homan*, 89 Ohio St.3d 421 (2000), paragraph one of the syllabus.

{¶ 32} A police officer may not make a warrantless arrest for a misdemeanor offense unless the act occurred in the officer's presence. *Hamilton v. Jacobs*, 100 Ohio App.3d 724 (12th Dist. 1995). However, an exception to this general rule exists where a defendant caused an automobile accident. Under such circumstances, police need not observe the impaired driving. *Bruner* at ¶ 14, citing *Oregon v. Szakovits*, 32 Ohio St.2d 271 (1972).

{¶ 33} Here, the testimony presented at the hearing on the motion to suppress demonstrated that Woznicki, a seven-year veteran with the Cleveland Police Department, had prior experience interacting with impaired drivers. Woznicki did not observe the accident but, during his investigation, he heard several individuals discussing that Clark was speeding and failed to stop at the stop sign and, ultimately, he concluded that Clark caused the accident. Witnesses, including EMS personnel, also reported to Woznicki that Clark appeared intoxicated and Clark was seen tossing an alcoholic beverage container out of his automobile window. Woznicki observed the heavy damage to both vehicles as well as the final resting spot of Clark's vehicle — four or five houses south of the intersection. Woznicki personally interacted with Clark and testified that Clark was unsteady on his feet, his eyes were glassy, he had slurred speech, he was incoherent and unable to describe how the accident occurred, he smelled of alcohol, and he was belligerent and attempted to leave the scene of the accident. While Clark did not admit to drinking alcohol, Woznicki's testimony supported the conclusion that Clark was impaired. And while Woznicki conceded that being in a serious accident could cause unsteadiness and slurred speech, the testimony provided additional factors that supported the officer's conclusion that Clark drove impaired.

{¶ 34} We find Clark's reliance on *Bruner*, 2002-Ohio-6512, at ¶ 10, in support of his suppression motion unpersuasive. The police in *Bruner* responded to a multiple-car accident on the highway. At the accident scene, Bruner admitted she had been drinking and the police officer noted an odor of alcohol on her breath.

Bruner initially was unable to recite the alphabet but successfully did so after the administration of a field-sobriety test. At the suppression hearing in *Bruner*, the City failed to introduce evidence that Bruner caused the motor vehicle accident or that her driving was impaired. In viewing the totality of the circumstances, this court found competent, credible evidence to support the trial court's determination that no probable caused existed to arrest Bruner for driving under the influence. Conversely, in the instant case, the City did present evidence that Clark drove impaired and caused the accident with Crandell.

{¶ 35} We find, in viewing the totality of the circumstances, that the City presented competent, credible evidence to support the trial court's determination that probable cause existed to arrest Clark for driving under the influence and for failure to stop at a stop sign. Thus, Clark's first assignment of error is overruled.

**Sufficiency of the Evidence and Crim.R. 29 Motion for Acquittal**

{¶ 36} In his second assignment of error, Clark argues the evidence presented by the City did not meet the burden of production to support convictions for either OVI or failure to stop at a stop sign and, therefore, his convictions were not supported by sufficient evidence. In his fourth assignment of error, Clark argues the trial court erred and abused its discretion when it denied his Crim.R. 29 motion for acquittal.

{¶ 37} A sufficiency of the evidence challenge requires a determination as to whether the State has met its burden of production at trial. *State v. Hunter*, 2006-Ohio-20, ¶ 41 (8th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 390 (1997).

An appellate court reviewing sufficiency of the evidence must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 2004-Ohio-6235, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. With a sufficiency inquiry, an appellate court does not review whether the State's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 2009-Ohio-3375, ¶ 25 (8th Dist.), citing *Thompkins* at 387. A sufficiency-of-the-evidence argument is not a factual determination, but a question of law. *Id.*

{¶ 38} Similarly, Crim.R. 29(A) provides that a court "shall order the entry of the judgment of acquittal of one or more offenses . . . if the evidence is insufficient to sustain a conviction of such offense or offenses." "Because a Crim.R. 29 motion questions the sufficiency of the evidence, '[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence.'" *Fairview Park v. Peah*, 2021-Ohio-2685, ¶ 37 (8th Dist.), quoting *State v. Tenace*, 2006-Ohio-2417, ¶ 37. Thus, we will address Clark's second and fourth assignments of error collectively.

{¶ 39} In a sufficiency inquiry — or Crim.R. 29(A) motion for acquittal inquiry — we assume the State's and City's witnesses testified truthfully and evaluate whether that testimony, along with any other evidence introduced at trial, satisfies each element of the offense. *In re D.R.S.*, 2016-Ohio-3262, ¶ 23 (8th Dist.). The elements of an offense may be proven by direct evidence, circumstantial evidence,

or both.  *See, e.g., State v. Wells*, 2021-Ohio-2585, ¶ 25 (8th Dist.), citing *State v. Durr*, 58 Ohio St.3d 86 (1991).  Direct evidence and circumstantial evidence have "equal evidentiary value."  *Wells* at ¶ 26, citing *State v. Santiago*, 2011-Ohio-1691, ¶ 12 (8th Dist.).

{¶ 40} Relevant to our review of the trial court's Crim.R. 29 ruling and Clark's sufficiency-of-the-evidence argument are the offenses for which the court found Clark guilty:  OVI and failure to stop at a stop sign.  Following a bench trial, the court found Clark guilty of driving under the influence, in violation of C.C.O. 433.01, that reads:

> (a) Driving under the influence.
> (1) No person shall operate any vehicle, . . . within this City, if, at the time of the operation, any of the following apply:
>  A. The person is under the influence of alcohol, a drug of abuse, or a combination of them.

{¶ 41} Generally, any lay witness, including a police officer, may testify whether an individual appeared intoxicated.  *State v. Clark*, 2007-Ohio-3777, ¶ 13 (8th Dist.), citing *State v. Schmitt*, 2004-Ohio-37, ¶ 12, citing *Columbus v. Mullins*, 162 Ohio St. 419, 421 (1954).  To establish one's impaired driving ability, the State may rely on physiological factors including slurred speech, bloodshot eyes, and the odor of alcohol.  *Solon v. Hrivnak*, 2014-Ohio-3135, ¶ 18 (8th Dist.), citing *Clark* at ¶ 13; *State v. Simms*, 2008-Ohio-4848, ¶ 6 (9th Dist.); *State v. Holland*, 1999 Ohio App. LEXIS 6143 (11th Dist. Dec. 17, 1999).  "Other factors that the state may use to show intoxication include evidence that the defendant caused an accident, refused to submit to a field-sobriety or chemical test, or exhibited a belligerent or combative

demeanor." *State v. Yared Fitsum Assefa*, 2023-Ohio-385, ¶ 20 (1st Dist.). Field-sobriety tests are not required to prove an OVI conviction. *Hrivnak* at ¶ 17, citing *State v. Strebler*, 2006-Ohio-5711, ¶ 17 (9th Dist.).

{¶ 42} The court also found Clark guilty of operation of his vehicle at a stop sign, in violation of C.C.O. 431.19, that reads:

> Except when directed to proceed by a law enforcement officer, every driver of a vehicle . . . approaching a stop sign shall stop at a clearly marked stop line, but if none, before entering the crosswalk on the near side of the intersection, or, if none, then at the point nearest the intersecting roadway where the driver has a view of approaching traffic on the intersecting roadway before entering it. After having stopped, the driver shall yield the right-of-way to any vehicle in the intersection or approaching on another roadway so closely as to constitute an immediate hazard during the time the driver is moving across or within the intersection or junction of roadways.

{¶ 43} In the instant case, Crandell testified that she entered the intersection after coming to a complete stop and was struck by Clark's vehicle because Clark failed to stop at the stop sign for his lane of travel. The trial testimony demonstrated that Clark exhibited slurred speech, unsteadiness, and an odor of alcohol. Clark refused to submit to a field-sobriety test and chemical test. The testimony showed Clark was belligerent with the officers and attempted to leave the scene of the accident. Based upon these observations, the officers determined Clark drove under the influence of alcohol. While the officers conceded the NHTSA manual does not recommend a field-sobriety test after a serious accident because unsteadiness and slurred speech could be caused by the accident rather than intoxication, the testimony supported many factors that indicated Clark's impairment due to

intoxication. The officers also determined from the property damage, the location of the two vehicles, and the witness statements that Clark caused the accident by failing to stop at the stop sign and yield the right of way to Crandell's vehicle. Overall, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. Clark's convictions were based upon sufficient evidence and, therefore, Clark's second and fourth assignments of error are overruled.

**Manifest Weight of the Evidence**

{¶ 44} In his third assignment of error, Clark contends that his convictions were against the manifest weight of the evidence.

{¶ 45} A manifest weight challenge questions the credibility of the evidence presented and examines whether the State met its burden of persuasion at trial. *State v. Whitsett*, 2014-Ohio-4933, ¶ 26 (8th Dist.), citing *Thompkins*, 78 Ohio St.3d 380 at 387; *State v. Bowden*, 2009-Ohio-3598, ¶ 13 (8th Dist.), citing *Thompkins* at 390. A reviewing court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172 (1st Dist. 1983), paragraph three of the syllabus. When considering an appellant's claim that a conviction is against the manifest weight of the evidence, the court of appeals sits as a "thirteenth juror" and may disagree with the factfinder's resolution of the conflicting testimony. *Thompkins* at 387, citing

*Tibbs v. Florida*, 457 U.S. 31, 42 (1982). A reversal on the basis that a verdict is against the manifest weight of the evidence is granted "only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin*. Reversal of a trial court's "judgment on manifest weight of the evidence requires the unanimous concurrence of all three appellate judges." *State v. Crumbley*, 2010-Ohio-3866, ¶ 20 (8th Dist.), citing *Thompkins* at paragraph four of the syllabus.

{¶ 46} In challenging the weight of the evidence supporting his convictions, Clark argues the record does not include (1) a positive chemical test, (2) competent, credible evidence that he drove impaired and (3) competent, credible evidence that he failed to stop at a stop sign.

{¶ 47} No chemical test results were provided because Clark refused to submit to the breath-analysis test. However, to prove a driver was impaired, the State need not establish the driver tested at a particular level of alcohol concentration in his body but must "prove that [the driver] had consumed alcohol in a quantity that had 'adversely and appreciably impaired [his] actions or mental processes and deprived [him] of that clearness of intellect and control of [him]self which he would otherwise have had.'" *State v. Panzeca*, 2020-Ohio-4448, ¶ 15 (1st Dist.), quoting *State v. Hall*, 2016-Ohio-783, ¶ 29 (1st Dist.), quoting *State v. Bakst*, 30 Ohio App.3d 141, 145 (1st Dist. 1986).

{¶ 48} Absent chemical testing, the City presented evidence of Clark's physiological characteristics including slurred speech, unsteadiness, and odor of alcohol; Clark's aggressive and belligerent demeanor; Clark's inability to describe

the events of the accident and Clark's refusal to submit to a field-sobriety test or breath-analysis test.

{¶ 49} At trial, Clark argued that officers are trained, pursuant to the NHTSA manual, not to administer a field-sobriety test following serious accidents because slurred speech and imbalance — signs of driver impairment due to drugs or alcohol — could also result from a serious accident. Based upon the facts of this case, we find the possibility that Clark's symptoms were caused by the accident — rather than his intoxication — unpersuasive where Clark refused medical attention, suggesting he was not injured; Officers Johnson and Woznicki smelled the odor of alcohol on Clark; Clark refused the field-sobriety and breath-analysis tests and the presence of multiple other indices described above that Clark was impaired.

{¶ 50} After a thorough review of the record, and weighing all the evidence, we cannot say that this is one of the rare cases in which the trier of fact lost its way. Clark's convictions were not against the manifest weight of the evidence and, thus, we overrule his third assignment of error.

{¶ 51} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cleveland Municipal Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27

of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

MICHELLE J. SHEEHAN, J., and
EILEEN T. GALLAGHER, J., CONCUR