[Cite as *State v. Poole*, 2025-Ohio-91.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-240270 |
| | | TRIAL NO. C/24/TRC/4764/A |
| Plaintiff-Appellant, | : | |
| vs. | : | |
| | | *O P I N I O N* |
| THERESA RUNE POOLE, | : | |
| Defendant-Appellee. | : | |


Criminal Appeal From: Hamilton County Municipal Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: January 15, 2025


*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Philip R. Cummings*, Assistant Prosecuting Attorney, for Plaintiff-Appellant,

*The Cochran Firm* and *Fanon A. Rucker*, for Defendant-Appellee.

**KINSLEY, Presiding Judge.**

{¶1} Plaintiff-appellant the State of Ohio appeals the judgment of the Hamilton County Municipal Court granting defendant-appellee Theresa Rune Poole's motion to suppress evidence collected prior to her arrest for operating a motor vehicle while under the influence ("OVI") because Poole was arrested without probable cause. Following an evidentiary hearing on Poole's motion, the trial court determined that one of the field sobriety tests an officer conducted on Poole was not performed in substantial compliance with the National Highway Traffic and Safety Administration ("NHTSA") standards. The trial court also found that the officer's testimony in court about two other field sobriety tests conflicted with what was depicted on his cruiser's camera. In addition to these specific factual findings, the trial court also made what amounted to a determination that the officer's testimony about his encounter with Poole lacked credibility. It suppressed the evidence on this basis.

{¶2} The State does not challenge the trial court's factual findings on appeal. Instead it argues in a single assignment of error that other facts outside of those determined by the trial court amounted to probable cause for Poole's OVI arrest. But we disagree. For the reasons that follow, we overrule the State's assignment of error and affirm the judgment of the trial court.

### *Factual and Procedural History*

{¶3} Following a traffic stop on February 10, 2024, Poole was charged with OVI under R.C. 4511.19(A)(1)(a) and speeding. The State subsequently dismissed the speeding charge against her. Thus, this appeal solely concerns the OVI charge.

{¶4} Poole filed a pretrial motion to suppress evidence. The motion argued that the officer who initiated the traffic stop conducted field sobriety tests on Poole without providing sufficient instructions and without properly demonstrating the

tests. The motion also argued that Poole's performance on the tests did not generate probable cause to suspect she was under the influence of alcohol.

{¶5} The trial court conducted an evidentiary hearing on Poole's motion. One witness testified: Officer Blake Mayberry of the Greenhills Police Department. Mayberry testified that he was working a traffic detail shortly after midnight on February 10, 2024. He observed Poole's car driving rapidly and used radar to clock her speed at 55 m.p.h. in a 35 m.p.h. zone. He initiated a traffic stop and approached the driver's side door.

{¶6} Mayberry explained that when he reached the driver's side of Poole's car, he smelled a strong odor of alcohol. He also noticed that Poole handed him her credit card rather than her driver's license. Mayberry testified that Poole handed him a second credit card before he eventually asked for her driver's license, which she provided. Poole then told Mayberry she had been coming from Bugatti's Lounge and admitted to drinking alcohol at Vinkolet Winery earlier that day.

{¶7} Mayberry then asked Poole to exit from the vehicle to perform field sobriety tests. His cruiser camera footage, which was later admitted into evidence, shows that he returned to his vehicle before conducting the tests. In his car, he told his partner that he wanted to get Poole out of her car so that he could discern whether the smell of alcohol was coming from her or from something else inside her vehicle. He also scoffed at Poole's belief that she would be able to go home from the scene, even though he had not yet investigated whether Poole was in fact intoxicated.

{¶8} Mayberry testified to his training in conducting field sobriety testing. He received a certification in 2017 and also attended an advanced training program. He also received NHTSA training at the police academy in 2017. Over objection, the trial court took judicial notice of the 2021 NHTSA field sobriety testing manual.

**{¶9}**   Mayberry then described Poole's performance on the field sobriety tests. First he conducted the horizontal gaze nystagmus ("HGN") test, which examines involuntary jerking of the eye.  Poole did not indicate she had any medical conditions that would impede her ability to complete this test.  For the HGN, Mayberry held a stimulus, in this case the tip of his pen, about 12 to 15 inches away from Poole's eye level.  He had her stand with her feet together and her arms at her side, facing away from the car lights, which he said he had turned off.  He instructed her to follow the stimulus with her eyes without moving her head.  He first prechecked Poole's eyes for equal pupil size and other normal eye conditions.  He then performed the test to look for clues of intoxication.  He found that Poole's left and right eyes both exhibited lack of smooth pursuit, which he tracked for two seconds, as well as nystagmus, which he tracked for four seconds.  This amounted to a score of four out of six clues on the test.

**{¶10}** Next Mayberry conducted the walk-and-turn test.   The test was conducted on the flat roadway, which did not have any visible obstructions.  Poole also did not indicate she had any medical conditions that would prohibit her from completing the test.  Mayberry instructed Poole to stand with her feet together and her arms at her side.  He asked her to imagine a straight line in front of her, and she indicated that she could do so.  He then asked her to stand with her left foot on the line and her right foot touching heel-to-toe on the line in front of her left foot.  At this point, Poole began walking, even though Mayberry had only asked her to stand in that position.   He then had her return to the standing position and wait for his next instruction, which was to take nine heel-to-toe steps down the imaginary line, turn around, and take nine heel-to-toe steps back down the imaginary line.  Mayberry demonstrated a portion of the test, during which Poole again began walking without being asked.  Mayberry again returned her to the standing position before instructing

4

her to begin the walk-and-turn test.

{¶11} Mayberry reviewed the cruiser camera footage of the walk-and-turn test while he was on the stand. After reviewing the footage, Mayberry testified that he calculated Poole to have scored five out of eight clues on the walk-and-turn test. But he was only able to identify four clues in court, despite refreshing his recollection with his report in court. Those four clues were starting the test too soon, losing balance during the instructional phase, stepping off of the line, and an improper turn. Mayberry testified that only two clues were needed on the walk-and-turn test to consider a person intoxicated.

{¶12} The final field sobriety test Mayberry testified he conducted was the one-leg stand. This requires a person to choose one leg, raise it off the ground by six inches with the toes pointed up, and count for 30 seconds. The State played Mayberry's cruiser cam footage of Poole's performance on the one-leg stand test. Mayberry then testified that he scored one out of four clues, because she put her leg down at the 16 second mark. But he conceded that two clues are needed to consider a person intoxicated on the one-leg stand test, and Poole only had one.

{¶13} Mayberry explained that, after conducting the three NHTSA field sobriety tests, he conducted an additional test, the Modified Romberg, that he learned through his additional police training. The Modified Romberg requires a person to stand with their feet together and their hands at their side with their head tilted backwards. The person then closes their eyes and silently counts to 30. When they believe 30 seconds have elapsed, they raise their head and open their eyes. As Mayberry explained, alcohol is a known depressant, so the test measures a person's ability to accurately estimate a 30-second period of time.

{¶14} Mayberry testified that, based on Poole's performance on the field

sobriety tests, he determined that she was under the influence and decided to arrest her.

{¶15} Defense counsel cross-examined Mayberry. On cross-examination, Mayberry admitted that he forgot to take a picture of the radar with Poole's car going 55 m.p.h. Mayberry also conceded that his report lacked detail as to the condition of Poole's eyes and that it did not say her eyes were bloodshot, glassy, or watery. His report also did not indicate that Poole spoke with slurred speech or was stuttering. Mayberry clarified the facts that gave rise to his suspicion of OVI prior to the field sobriety testing: speeding, an odor of alcohol, and providing credit cards rather than a driver's license. But defense counsel pointed at that Mayberry's arrest report only indicated that speed and odor were indicators of intoxication, and that he did not reference the credit card or the field sobriety testing as the bases for arrest in that report.

{¶16} Defense counsel then asked questions about the credit card and played the portion of the cruiser camera video that captured this interaction. Mayberry admitted that, whereas he previously testified that Poole handed him two different credit cards, she actually only gave him one credit card.

{¶17} Defense counsel also questioned Mayberry about speed and specifically pointed out that the NHTSA manual excludes speed as an indicator of intoxication. Mayberry conceded this point.

{¶18} With regard to the HGN test, Mayberry agreed that the NHTSA standards required him to turn off all automobile hazard lights during the test. And he testified that he did in fact turn them off. But defense counsel played Mayberry's cruiser camera footage, which showed that the hazard lights on Poole's vehicle were on during the HGN test. Defense counsel also pointed out that Poole did not have her

6

shoes on during the walk-and-turn test, a fact that Mayberry had omitted during his direct examination. Mayberry also conceded that Poole had actually performed better on the walk-and-turn test than he had scored and that she counted the number of steps and walked heel-to-toe correctly.

{¶19} With regard to the one-leg stand test, defense counsel asked Mayberry a series of questions about his demonstration of the test. Mayberry conceded that he also put his foot down during the test and that he was not intoxicated while doing so. He later described the weight of his uniform as contributing to his inability to balance.

{¶20} After Mayberry testified, the parties presented oral closing arguments. For its part, the State argued that the officer reasonably suspected Poole was intoxicated based on the odor of alcohol coming from her vehicle and the fact she handed Mayberry a credit card rather than her driver's license. The State also argued that the field sobriety tests were conducted in substantial compliance with the NHTSA standards. With regard to the HGN, the State admitted that Poole's hazard lights remained on, but pointed to the fact that Mayberry's were off to demonstrate substantial compliance. The State also suggested that Poole demonstrated sufficient clues on the tests to show intoxication.

{¶21} The defense, on the other hand, argued that Poole's performance on the field sobriety testing did not demonstrate impairment. With regard to the one-leg stand test, the defense contended that Poole demonstrated fewer clues than the officer did when he demonstrated the test. With regard to the walk-and-turn test, the defense highlighted cruiser camera video showing that Poole performed better on the test than Mayberry. With regard to the HGN test, Poole argued that Mayberry performed the test incorrectly by pointing her in the direction of the flashing lights on her car, which should have been turned off under the NHTSA standards.

**{¶22}** The trial court issued its decision on Poole's motion to suppress in open court on April 30, 2024. It made the following findings on the record:

1) Mayberry mocked Poole about the way she spoke to him.

2) Mayberry indicated to his partner that he wanted to get her out of her car so that he could determine whether the odor of alcohol was coming from her person or from her car.

3) The HGN test was not performed in substantial compliance with the NHTSA manual because Poole was facing flashing lights during the test.

4) Mayberry stated in his report that Poole committed more clues on the walk-and-turn test than he could identify in the cruiser cam footage of the test.

5) Poole performed better than Mayberry on the one-leg stand test. Poole put her foot down once, but Mayberry put his foot down twice.

6) Mayberry conducted a non-NHTSA test, the Modified Romberg, to gather more evidence after he conducted the NHTSA field sobriety tests.

7) Poole's only traffic infraction was speeding. Poole came to a proper stop and did not slur her speech.

8) Poole performed better on the field sobriety testing than Mayberry reported.

**{¶23}** In addition to these findings, the trial court interpreted Mayberry's administration of a non-NHTSA test as evidence that he was unconvinced of Poole's intoxication following the NHTSA tests. The court concluded that Mayberry would

8

not have needed to investigate further following the standard field sobriety tests if he believed those tests supported a finding of intoxication.

**{¶24}** The trial court then cited several cases to support its analysis, including *State v. Phoenix*, 2010-Ohio-6009 (1st Dist.), and *State v. Beagle*, 2003-Ohio-4331 (2d Dist.). It indicated that *Phoenix* permitted it to take into account the fact that the officer's testimony conflicted with what was depicted on the video. It therefore held that there was no probable cause to arrest Poole for OVI under R.C. 4511.19(A)(1)(a) and granted Poole's motion to suppress.

**{¶25}** The State now appeals.

### *Analysis*

**{¶26}** In a single assignment of error, the State challenges the trial court's judgment granting Poole's suppression motion.

**{¶27}** In ruling on a motion to suppress, the trial court is in the best position to assess the credibility of the witnesses and make findings based on the evidence presented to it. *State v. Rasool*, 2022-Ohio-3409, ¶ 5 (1st Dist.). Where the trial court makes such factual findings, we are bound to follow them if they are supported by competent, credible evidence. *State v. Daniels*, 2024-Ohio-3392, ¶ 6 (1st Dist.). We review the trial court's legal conclusions de novo. *Id.*

**{¶28}** In an OVI case, a warrantless arrest is constitutional where it is supported by probable cause. *City of Cleveland v. Clark*, 2024-Ohio-4491, ¶ 31 (8th Dist.). This standard assesses whether the arresting officer had sufficient information at the time of the arrest, derived from a reasonably trustworthy source of facts and circumstances, to cause a reasonable and prudent person to believe that the suspect committed the offense. *Rasool* at ¶ 6.

**{¶29}** In disputing the trial court's conclusion that Poole's arrest was without

probable cause, the State does not take issue with the trial court's factual findings. Nor does it challenge the trial court's conclusions regarding the conflict between Mayberry's testimony and his cruiser camera footage or his decision to administer an additional non-NHTSA test. Instead, it argues that, even accepting the trial court's factual findings, the evidence presented at the suppression hearing nonetheless amounted to probable cause to support Poole's arrest.

**{¶30}** In mounting this argument, the State claims that it proved the following below: Poole was exceeding the speed limit by 20 m.p.h., Mayberry smelled alcohol when he approached Poole's car, Poole attempted to give Mayberry a credit card rather than her driver's license, and Poole performed poorly on field sobriety testing. But the trial court's factual findings—which we are bound to follow on appeal—exclude these assertions.

**{¶31}** To that end, the trial court made detailed findings of fact below. None of those findings concerned Poole's rate of speed, the source of the odor of alcohol, or Poole's actions in handing Mayberry a credit card. And the trial court disagreed with the State's assertion that Poole failed field sobriety testing. To the contrary, the trial court made a finding that video evidence contradicted Mayberry's testimony in court. The trial court also concluded that Poole actually performed better on the field sobriety testing than Mayberry reported after watching the cruiser camera footage. And the trial court also determined that Mayberry's administration of the HGN test did not substantially comply with NHTSA standards, a finding the State does not challenge on appeal. Taken together, the trial court's factual findings suggest that the trial court viewed Mayberry's testimony with skepticism.

**{¶32}** The trial court had good reason to doubt Mayberry, as he contradicted both himself and the video footage several times. For example, he first testified that

Poole provided him two credit cards, but later admitted that she only did this once. He also indicated that Poole failed five clues on the walk-and-turn test but could only identify four on the video. He later admitted that at least two of those clues were not even recognized by the NHTSA manual. Additionally, he testified that he complied with NHTSA standards during the HGN test by turning all the hazard lights off, but then the video showed that he both left Poole's flashing lights on and turned her in that direction to conduct the test. With regard to the radar check of Poole's speed, he testified that he simply forgot to take a photograph of the radar result, but then later said he had taken the picture and provided it with his report. And Mayberry was not completely consistent about what evidence supported Poole's arrest. In his report, he wrote that Poole was intoxicated based on her speed and odor of alcohol. But at the suppression hearing, he indicated that he arrested her based on her performance on the field sobriety tests without mentioning those other criteria. Given these inconsistencies, it appears that the trial court simply did not credit Mayberry's testimony about other aspects of the traffic stop, including how Poole smelled, how fast she was driving, and what card she handed Mayberry when he approached her car.

**{¶33}** Specifically with regard to the field sobriety tests, the trial court made a finding that the HGN test did not substantially comply with the NHTSA standards. With regard to the walk-and-turn test, the trial court made a finding that Poole performed better than Mayberry said she did. With regard to the one-leg stand test, the trial court found that Poole outperformed Mayberry. The State does not specifically challenge any of these findings, which undercut the reliability of the field sobriety tests in amounting to probable cause. *See, e.g., State v. Simmons*, 2019-Ohio-559, ¶ 19 (10th Dist.) ("when there is video evidence of the defendant's performance, a court is entitled as a factfinder to consider whether the defined 'clues' were actually

present; it is not required to believe an officer's testimony about the presence of clues when the video shows otherwise").

**{¶34}** That leaves Poole's alleged speeding, the odor of alcohol, and providing a credit card rather than a driver's license. Even if we agreed with the State that these facts actually occurred—a determination we are not empowered to make in light of the trial court's factual findings—that information is less than what is needed to generate probable cause in an OVI case. Courts have held that the mere odor of alcohol and speeding, without more, does not indicate a person is under the influence, particularly when the person lacks other indicia of intoxication like bloodshot eyes or slurred speech. *See, e.g., Beagle*, 2003-Ohio-4331, at ¶ 38-39 (2d Dist.) (finding lack of probable cause for OVI where driver crossed lane twice and came close to hitting another car, was slow in stopping, smelled of alcohol, and admitted to drinking, but lacked slurred speech and bloodshot eyes and otherwise presented normally to officers); *State v. Beck*, 1988 Ohio App. LEXIS 517, *7-8 (Feb. 18, 1988 10th Dist.). And while providing a credit card rather than a driver's license might be an indication of some confusion, case law suggests that more is needed in a person's presentation or behavior to demonstrate that they are intoxicated. *See Beagle* at ¶ 38 (explaining that a driver may be "somewhat disconcerted and distracted upon being pulled over by a . . . patrol officer" rather than being intoxicated).

**{¶35}** As we noted in *Rasool*, 2022-Ohio-3409, at ¶ 14 (1st Dist.), "a reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court." The trial court in Poole's case clearly disbelieved Mayberry's in-court testimony and relied instead on cruiser camera footage demonstrating a lack of evidence that Poole was intoxicated when she was arrested. Because the trial court

was in the best position to assess the credibility of the witnesses and evidence, and because we are bound by the trial court's resulting factual findings, we overrule the State's assignment of error.

### *Conclusion*

**{¶36}** The State's sole assignment of error is overruled, and the judgment of the trial court granting Poole's motion to suppress evidence collected prior to her warrantless OVI arrest is affirmed.

Judgment affirmed.

**BERGERON** and **WINKLER, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.