[Cite as *State v. Vinka*, 2025-Ohio-2567.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

KODY N. VINKA,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 25 BE 0002**

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 24 CR 194

**BEFORE:**
Mark A. Hanni, Cheryl L. Waite, Katelyn Dickey, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan*, Belmont County Prosecutor, and *Atty. Jacob A. Manning*, Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Michael P. Dunham*, for Defendant-Appellant.

Dated: July 21, 2025

**HANNI, J.**

{¶1} Defendant-Appellant, Kody N. Vinka, appeals from a January 2, 2025 Belmont County Common Pleas Court judgment sentencing him to 12 months in prison after a jury found him of guilty of fifth-degree felony assault on a corrections officer.

{¶2} Appellant asserts that the court erred in instructing the jury that he could only be acquitted if the State failed to prove all elements of the offense. He also contends that his counsel was ineffective for failing to object to this instruction. He further claims sufficient evidence does not support his conviction and it was against the manifest weight of the evidence. He also asserts that the trial court erred in sentencing him to the maximum sentence because the sentence was not supported by the record and constituted cruel and unusual punishment.

{¶3} For the following reasons, we find that that the trial court did not err in its jury instructions and thus no ineffectiveness of counsel occurred for failing to object to the instructions. Further, sufficient evidence supports Appellant's conviction and it was not against the manifest weight of the evidence. Finally, we hold that the trial court did not err in sentencing Appellant to the maximum sentence.

{¶4} On September 25, 2024, a Belmont County Grand Jury indicted Appellant of fifth-degree felony assault on a corrections officer in or on the grounds of a local correctional facility while he was in custody of the correctional facility in violation of R.C. 2903.13(A) and (C)(4)(a).

{¶5} At trial, Belmont County Sheriff's Deputy Tristan Thomas testified he was called back from road duty on July 13, 2024 after jail staff reported problems with Appellant, an inmate identified as a combative male. (Trial Tr., 132-133). Deputy Thomas returned to the jail and learned that staff had shot a PepperBall into Appellant's holding cell and they requested help extracting Appellant from the cell to place him in a restraint chair. (Trial Tr., 133). Deputy Thomas observed Appellant cutting himself with fragments of the PepperBall. (Trial Tr., 143). He testified that he helped take Appellant out of his cell and put him in the restraint chair so he could not further harm himself or others. (Trial Tr., 136). Deputy Thomas activated his body camera and indicated that as Appellant exited his cell with officers around him, Appellant became combative. (Trial Tr., 141).

Case No. 25 BE 0002

Deputy Thomas testified that at 00:55 of his body camera footage, Appellant struck Deputy Evans in the face with a closed right fist while officers were placing him in the chair and putting restraints on him. (Trial Tr., 141). Appellant was strapped into the restraint chair and wheeled back into his cell. (Trial Tr., 141).

{¶6} On cross-examination, Deputy Thomas testified he was unaware Appellant was under suicide watch until he saw the suicide prevention suit in the holding cell that Appellant had removed. (Trial Tr., 144). He heard Appellant kicking his cell door and yelling obscenities, even after the PepperBall. (Trial Tr., 144). He agreed Appellant was not decontaminated before he was placed in the restraint chair. (Trial Tr., 145).

{¶7} Deputy Skylar Evans of the Belmont County Sheriff's Office testified he was a corrections officer at the jail and involved with Appellant on July 13, 2024. (Trial Tr., 148-149). He stated that an altercation occurred between Appellant and another inmate after denial of their request to be housed together. (Trial Tr., 150). Deputy Evans stated that the two then made suicidal comments, so they were placed in holding cells on suicide precaution to be closely monitored. (Trial Tr., 151). Deputy Evans testified that because of the suicide precaution, the men were placed in suicide smocks with no clothes underneath and no belongings in their cells. (Trial Tr., 152).

{¶8} He recalled Appellant and the other inmate talking between the tray doors. (Trial Tr., 152). He related that officers attempted to close Appellant's tray door to stop the talking, but Appellant left his arm in the door. (Trial Tr., 152). Deputy Evans requested that Appellant remove his arm, but Appellant did not comply. (Trial Tr., 153). Deputy Evans testified that his supervisor, Sergeant Christian Gorza, decided to use a PepperBall gun and Appellant became more combative after the gun was used. (Trial Tr., 154). He explained that Appellant started cutting himself with PepperBall shell fragments and a decision was made to place him in the restraint chair. (Trial Tr., 154). He had been trained in using the chair. (Trial Tr., 154).

{¶9} Deputy Evans testified that Appellant sat in the chair willingly and when he attempted to put Appellant's arm in the right restraint of the chair, Appellant's right fist raised and hit him in the left side of his jaw. (Trial Tr., 156). He suffered a wound on the left side of his tongue, which was documented. (Trial Tr., 156). Deputy Evans' body camera footage was played to the jury. (Trial Tr., 159-160).

Case No. 25 BE 0002

{¶10} On cross-examination, Deputy Evans outlined the suicide precautions. (Trial Tr., 171). He acknowledged observing Sergeant Gorza kick the tray door with Appellant's arm still in it. (Trial Tr., 171). Deputy Evans testified that Appellant was directly in front of the PepperBall gun when it was shot into his cell, even though the standoff distance recommended was 20 feet. (Trial Tr., 174). He also heard Sergeant Gorza say he did not care if Appellant was shot with the gun. (Trial Tr., 174). He acknowledged Appellant was no threat after his tray door was closed. (Trial Tr., 176).

{¶11} Deputy Evans recalled Appellant kicking and making noise before the PepperBall gun was deployed and Appellant sat in the cell with no ventilation after the gun was used. (Trial Tr., 178). He admitted Appellant was not decontaminated before being placed in the restraint chair, which did not comply with policies and procedures of the sheriff's office. (Trial Tr., 180). He also admitted Appellant was not restrained in handcuffs and leg irons before being placed in the restraint chair, which was also required. (Trial Tr., 181).

{¶12} Deputy Evans further testified he did not believe Appellant was trying to hit him when Appellant's fist hit his face. (Trial Tr., 183).

{¶13} Sergeant Christian Gorza testified. (Trial Tr., 197). He recalled July 13, 2024 when Appellant and another inmate alerted staff that they were suicidal. (Trial Tr., 202). He expressed doubt about the suicidal ideations as he learned that they just wanted moved from their cells. (Trial Tr., 204).

{¶14} Sergeant Gorza testified the two inmates were placed on suicide precaution, which meant they were placed in separate holding cells, stripped of their clothing, placed in suicide smocks, and left with only a mat and a blanket. (Trial Tr., 204-205). He recalled the two inmates communicating through their tray doors and they were allowed to do so until they began screaming threats to officers and Appellant tried to grab one of the officers through his tray door. (Trial Tr., 205-206). Sergeant Gorza stated they tried to close Appellant's tray door, but he kept his hands in the door to prevent it from shutting. (Trial Tr., 207). Sergeant Gorza indicated he manipulated Appellant's hands to get them out of the tray door. (Trial Tr., 207).

{¶15} Sergeant Gorza related that once the tray door was shut, Appellant began kicking the cell door, which could create problems for inmates housed there due to mental

health issues. (Trial Tr., 208). He decided to employ the PepperBall gun and activated his body camera. (Trial Tr., 208). The footage was played to the jury. (Trial Tr., 209). Sergeant Gorza testified he saw Appellant strike Deputy Evans in the jaw while Deputy Evans was attempting to restrain Appellant. (Trial Tr., 220).

**{¶16}** On cross-examination, Sergeant Gorza acknowledged that some of the statements made in his officers' reports mirrored his. (Trial Tr., 244-245). He also acknowledged that after the tray door was closed, Appellant posed no danger to others. (Trial Tr., 250). He conceded that they did not use the PepperBall gun on the other inmate who was kicking his cell door. (Trial Tr., 252-253). He admitted that he stated that officers should grab and dump Appellant into the chair and to let him "sit and cook" in the cell with the PepperBall fumes. (Trial Tr., 255-256). He also acknowledged that decontamination and restraint procedures were not followed before placing Appellant in the restraint chair. (Trial Tr., 257). Sergeant Gorza also noted that Appellant was initially compliant and he stood up and walked voluntarily out of his cell and sat in the restraint chair. (Trial Tr., 258).

**{¶17}** After the close of the State's case, Appellant's counsel moved for a directed verdict under Crim.R. 29. (Trial Tr., 275). The court overruled the motion. (Trial Tr., 276).

**{¶18}** Appellant's counsel also requested a jury instruction on the lesser included offense of disorderly conduct under R.C. 2917.11(A). (Trial Tr., 276). The court granted the request and included a jury instruction on fourth-degree misdemeanor disorderly conduct. (Trial Tr., 280).

**{¶19}** On December 17, 2024, the jury returned a guilty verdict on fifth-degree felony assault as charged in the indictment.

**{¶20}** The trial court held a sentencing hearing and on January 2, 2025, the court issued a judgment entry sentencing Appellant to 12 months in prison.

## ELEMENTS OF THE OFFENSES

**{¶21}** R.C. 2903.13(A) and (C)(4) outline the elements of assault and the relevant penalty in this case:

(A) No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn.

(C)(1) Whoever violates this section is guilty of assault, and the court shall sentence the offender as provided in this division and divisions (C)(1), (2), (3), (4), (5), (6), (7), (8), (9), and (10) of this section. Except as otherwise provided in division (C)(2), (3), (4), (5), (6), (7), (8), or (9) of this section, assault is a misdemeanor of the first degree.

(4) If the offense is committed in any of the following circumstances, assault is a felony of the fifth degree:

(a) The offense occurs in or on the grounds of a local correctional facility, the victim of the offense is an employee of the local correctional facility or a probation department or is on the premises of the facility for business purposes or as a visitor, and the offense is committed by a person who is under custody in the facility subsequent to the person's arrest for any crime or delinquent act, subsequent to the person's being charged with or convicted of any crime, or subsequent to the person's being alleged to be or adjudicated a delinquent child.

**{¶22}** The elements of disorderly conduct under R.C. 2917.11(A) are:

(A) No person shall recklessly cause inconvenience, annoyance, or alarm to another by doing any of the following:

(1) Engaging in fighting, in threatening harm to persons or property, or in violent or turbulent behavior.

**{¶23}** On January 17, 2025, Appellant filed a notice of appeal asserting four assignments of error. Appellant's first assignment of error states:

**The trial court erred as a matter of law, abused its discretion, and, committed plain and structural error in its jury instruction by requiring a conviction unless the state failed to prove all elements beyond any**

**reasonable doubt in violation of Mr. Vinka's right to Due process of law and a fair trial under US Con. Amend. V, US Con. Amend. VI, US Con. Amend. XIV, and, Ohio Con. Art. I. Tr. Passim**

**{¶24}** Appellant contends the trial court erred by instructing the jury that an acquittal was warranted only if the State failed to prove beyond a reasonable doubt *all* of the elements of assault or disorderly conduct. He submits that the court should have instructed that an acquittal was warranted if the State failed to prove beyond a reasonable doubt *any* of the elements of assault or disorderly conduct. He cites an example of the difference, stating that if the State failed to prove the mens rea element of assault beyond a reasonable doubt, but proved the element that Appellant was in jail, then a jury would be told to convict him even though the law would require acquittal.

**{¶25}** Appellant asserts that his counsel objected to the assault charge, but not to the disorderly conduct charge. However, he asserts that plain error in the instructions requires reversal. He quotes the instructions given to the jury by the court and cites an exchange between the assistant prosecutor and a prospective juror which he submits further confused the issue and infected the jury pool. The prospective juror was later excused, but Appellant contends that the contamination remained.

**{¶26}** Appellee counters that the court properly instructed the jury and submits that plain error is the proper standard of review for both charges because Appellant did not object to either instruction. The State further contends that questioning of prospective jurors by both defense counsel and the assistant prosecutor showed their understanding of the burden on the State was perfectly clear.

**{¶27}** Appellant challenges the following jury instruction given by the court after the court recited the essential elements for assault:

> In summary, if you find that the State proved beyond a reasonable doubt all essential elements of the offense of assault, as alleged, on or about July 13 of 2024 in Belmont County, Ohio, your verdict must be guilty as charged. However, if you find that the State failed to prove beyond a reasonable doubt *all* of the essential elements of that offense, then your verdict must be not guilty.

Case No. 25 BE 0002

(Trial Tr., 291) (emphasis added).

**{¶28}** Appellant challenges the same jury instruction on the disorderly conduct charge after the court set forth all of the essential elements of disorderly conduct:

> In summary, if you find that the State proved beyond a reasonable doubt all of the essential elements of the offense of disorderly conduct, as alleged, on or about July 13 of 2024, in Belmont County, Ohio your verdict must be guilty as charged. However, if you find that the State failed to prove beyond a reasonable doubt *all* of the essential elements of that offense, then your verdict must be not guilty.

(Trial Tr., 292) (emphasis added).

**{¶29}** Appellant also quotes the following exchange between the assistant prosecutor and Prospective Juror Mr. T., before Mr. T. was excused from the jury pool:

> MR. VAVRA: Mr. T., knowing that the facts are going to be presented that he was an inmate at the time, does that cause any immediate thoughts in your mind?
>
> PROSPECTIVE JUROR T.: I guess why was he in originally?
>
> MR. VAVRA: What if you never find out?
>
> PROSPECTIVE JUROR T.: I guess, true, I don't know until – I mean, I don't even know what he is being accused of today. So, it may, but I can't truthfully answer that until - - if you never do find out, I guess.
>
> MR. VAVRA: So, you think the fact that he was an inmate at the time might affect your ability to - - or might cause you to have some bias towards him?
>
> PROSPECTIVE JUROR T.: A little bit. Yes.
>
> MR. VAVRA: Okay. And again, what if there's no evidence presented or you never find out why he was an inmate? Is that going to cause you some concern? Is that going to be a thought in your mind?

PROSPECTIVE JUROR T.: No, not a critical thought on the outcome, but it will be in my mind why he was originally in there.

(Trial Tr., 40-41).

{¶30} Appellant further quotes the following exchange between the assistant prosecutor and Prospective Juror T.:

MR. VAVRA: The Defendant has no burden. Do you understand that?

PROSPECTIVE JUROR T.: Yeah.

MR. VAVRA: So he doesn't have to prove anything. The State is the only one who has to prove it. Do you understand?

PROSPECTIVE JUROR T.: Yes. But I can't see how the Defendant can't defend himself if he is not - - doesn't do anything against the State.

MR. VAVRA: Okay. All right. So that would cause you some concern, fair to say, if there's nothing put on my [sic] the Defendant, no evidence?

PROSPECTIVE JUROR T.: Right.

(Trial Tr., 47).

{¶31} Appellant submits that these exchanges infected the jury pool because it presented confusion as to the burden on the State. He asserts that it also confused the jury as to the requirement on the State to prove all elements of the offenses.

{¶32} We find no merit to Appellant's assignment of error. Appellant's counsel did not object to this jury instruction for either charge. Crim.R. 30(A) provides in pertinent part:

On appeal, a party may not assign as error the giving or the failure to give any instructions unless the party objects before the jury retires to consider its verdict, stating specifically the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

Case No. 25 BE 0002

**{¶33}** However, we may review the instructions for "plain errors or defects affecting substantial rights" even if the errors or defects were not brought to our attention. Crim.R. 52(B). We must use the "utmost caution" in applying plain error and should only do so "under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus. The defendant must show that absent the plain error, the outcome of the trial would have been different. *See State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Plain error exists when deviation from a legal rule exists, the deviation is obvious, and it affected the defendant's substantial rights by affecting the outcome of the trial. *Id.*

**{¶34}** The challenged jury instructions did not constitute plain error. The instructions are nearly identical to those in the Ohio Jury Instructions. The latter reads that, "[i]f you find that the state failed to prove beyond a reasonable doubt any one of the essential elements of the offense . . . then your verdict must be not guilty." 2 Ohio Jury Instructions CR 425.02. The trial court instructed the jury that, "if you find that the State failed to prove beyond a reasonable doubt all of the essential elements of that offense, then your verdict must be not guilty." (Trial Tr., 290-291). The only difference is the use of "all" instead of "any."

**{¶35}** In *State v. Wilks*, 2018-Ohio-1562, the Ohio Supreme Court addressed this very issue. The trial court there had advised the jury "that if the state failed to prove *all the elements* of the aggravated-murder charge, then it must find the defendant not guilty." *Id*. at ¶ 122.

**{¶36}** The Ohio Supreme Court explained that jury instructions must "'correctly and completely state the law.'" *Id.*, quoting *Groob v. KeyBank*, 2006-Ohio-1189, ¶ 32. It directed that courts should review jury instructions to determine whether the instruction is correct and whether it could be potentially misleading. *Id.* at ¶ 123, citing *State v. White*, 2015-Ohio-492, ¶ 52. The Court further advised that when a jury instruction is ambiguous, the court must consider "'whether there is a reasonable likelihood that the jury has applied [it] in a way' that violates the Constitution." *Id.*, quoting *Estelle v. McGuire*, 502 U.S. 62, 72, (1991), quoting *Boyde v. California*, 494 U.S. 370, 380 (1990).

**{¶37}** In reviewing the jury instruction, the Ohio Supreme Court explained that the instruction is not considered on its own, but is reviewed in conjunction with the entire jury

Case No. 25 BE 0002

charge. *Wilks*, 2018-Ohio-1562, at ¶ 123, citing *State v. Madrigal*, 87 Ohio St.3d 378, 396 (2000). Applying these principles, the Court held the single instruction on its own could be interpreted incorrectly because it did not clearly state that the jury had to find the defendant not guilty if the state failed to prove any of the essential elements beyond a reasonable doubt. *Id*. at ¶ 125. However, the Court cited other instructions given to the jury by the trial court that it held provided certainty that the challenged instruction was not prejudicially misleading. *Id*. at ¶ 128. The Court cited to the trial court's reading of all of the essential elements of the offense and the instruction that the jury had to acquit the defendant unless the state proved every essential element beyond a reasonable doubt. *Id.* at ¶ 126-128.

{¶38} In *State v. Remillard*, 2019-Ohio-3545, ¶ 44 (5th Dist.), the Fifth District Court of Appeals found "no practical difference between the state failing to prove any element and the state failing to prove all elements" of an offense. The court found that both of the terms placed the same burden on the state and instructed the jury that they could consider a lesser included offense if the state failed to convince them of each element of the offense beyond a reasonable doubt. *Id.*

{¶39} We find no plain error in the trial court's jury instructions. As in *Wilks*, it is possible an argument could be made that the challenged instructions may have slightly mislead the jury if they were the only instructions given by the court. However, the trial court instructed the jury that before they could find Appellant guilty of each offense, they had to find beyond a reasonable doubt each essential element of the offenses and the court read each element to the jury. (Trial Tr. 288-293). Moreover, both defense counsel and the prosecution spent lengthy periods of time with the prospective jurors ensuring that they understood the burden rested with the State and the defendant had no burden to prove his innocence. Both counsel also asked questions of the prospective jurors about the burden and reinforced that the State had the burden to prove each and every element of the offenses. For instance, the assistant prosecutor explained to the prospective jurors that "the State has to prove to you beyond a reasonable doubt all the elements of the case. The Defendant has no burden." (Trial Tr., 47). Defense counsel also explained, "Mr. Vavra did a good job of explaining and Mr. [Prospective Juror R.] answered

appropriately; the burden of proof is completely on the State to prove each and every element." (Trial Tr., 51).

**{¶40}** In addition, the exchanges with Prospective Juror T. posed no contamination of the jurors actually chosen to sit on the jury. The initial exchange between the prosecution and Prospective Juror T. showed his misunderstanding of the burden of proof, but the prosecution and defense counsel ultimately helped him understand. For instance, the assistant prosecutor explained that "the State has to prove to you beyond a reasonable doubt all the elements of the case. The Defendant has no burden." (Trial Tr., 47). When asked if he understood, Prospective Juror T. answered yes. (Trial Tr., 47). Further, defense counsel explained, "Mr. Vavra did a good job of explaining and Mr. [Prospective Juror R.] answered appropriately; the burden of proof is completely on the State to prove each and every element." (Trial Tr., 51). When Prospective Juror T. indicated that he would want to hear both sides and he may have difficulty in reaching a verdict if Appellant did not testify, defense counsel explained reasons why a defendant may not want to take the stand. (Trial Tr., 52-53). Prospective Juror T. then indicated he understood why a defendant may not present his side of the story even if he was not guilty of a crime. (Trial Tr., 53).

**{¶41}** In any event, Prospective Juror T. was removed as a prospective juror and no indication exists in the record that his exchanges confused any of the actual jurors. (Trial Tr., 59). Appellant does not cite any fact or statement by any of the jurors evidencing confusion caused by Prospective Juror T.'s statements. In addition, Appellant has not shown that even if error existed, the outcome of the trial clearly would have been different because the testimony of the sheriff's deputies and the sergeant constituted strong evidence against Appellant.

**{¶42}** Accordingly, Appellant's first assignment of error lacks merit and is overruled.

**{¶43}** In his second assignment of error, Appellant asserts:

> **Mr. Vinka's conviction was based on insufficient evidence and against the manifest weight of the evidence, in violation of Mr. Vinka's rights to due process of law and a fair trial under the US Constitution.**

**Amend. V, US Con. Amend. VI, US Con. Amend. XIV, and, Ohio Con. Art. I. Tr. Passim.**

**{¶44}** Appellant quotes Crim.R. 29 and contends that insufficient evidence existed to convict him of assault. He reasons that the testimony established that he did not intend to hit Deputy Evans, which negated the "knowingly" element of assault.

**{¶45}** Appellant further contends that the conviction was against the manifest weight of the evidence. He cites Deputy Evans' testimony that Evans did not believe that Appellant intended to hit him. (Trial Tr., 183). He submits that the sole reason for the use of force on him was because he was talking to another inmate and Sergeant Gorza authorized the use of lethal force on him. (Trial. Tr., 155). He further notes that he was injured when officers slammed his tray door shut. (Trial Tr., 152). He cites our decision in *State v. Holladay*, 2020-Ohio-5459 (7th Dist.), in support of his assertion. He submits that in that case, we found insufficient evidence to convict the defendant of knowingly striking an officer with a vehicle and the officer conceded in his testimony that the defendant did not have the general intent to hit him.

**{¶46}** A Crim.R. 29 motion questions the sufficiency of the evidence. *Cleveland v. Clark*, 2024-Ohio-4491, ¶ 38 (8th Dist.). Accordingly, we apply the same standard of review to a Crim.R. 29 motion as we do when reviewing for the sufficiency of the evidence. *Id.*

**{¶47}** Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113 (1997). Sufficiency is a test of adequacy. *State v. Thompkins*, 1997-Ohio-52. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id*. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements proven beyond a reasonable doubt. *Smith* at 113. When evaluating the sufficiency of the evidence to prove the elements, it must be remembered that circumstantial evidence has the same probative value as direct evidence. *State v. Thorn*, 2018-Ohio-1028, ¶ 34 (7th Dist.), citing *State v. Jenks*, 61 Ohio St.3d 259, 272-273 (1991) (superseded by state constitutional amendment on other grounds).

Case No. 25 BE 0002

**{¶48}** In determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins,* 1997-Ohio-52. "Weight of the evidence concerns 'the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" *Id*. In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. *Id*. at 390.

**{¶49}** Only when "it is patently apparent that the factfinder lost its way," should an appellate court overturn the jury verdict. *State v. Woullard*, 2004-Ohio-3395, ¶ 81 (2d Dist.). If a conviction is against the manifest weight of the evidence, a new trial is to be ordered. *Thompkins* at 387. "No judgment resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the cause." *State v. Miller*, 2002-Ohio-4931, ¶ 36, quoting Ohio Const., art. IV, § 3(B)(3).

**{¶50}** The jurors are free to believe some, all, or none of each witness' testimony and they may separate the credible parts of the testimony from the incredible parts. *State v. Barnhart*, 2010-Ohio-3282, ¶ 42 (7th Dist.), citing *State v. Mastel*, 26 Ohio St.2d 170, 176 (1971). When there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, this Court will not choose which one is more credible. *State v. Gore*, 131 Ohio App.3d 197, 201 (7th Dist.1999).

**{¶51}** As indicated above, R.C. 2903.13(A) requires that a person "knowingly cause or attempt to cause physical harm to another." "Knowingly" is defined under R.C. 2901.22(B) as:

> (B) A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is

a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

**{¶52}** In *Holladay*, 2020-Ohio-5459, at ¶ 19 (7th Dist.) a defendant attempting to flee from a patrol officer in a vehicle bumped into the patrol officer with the front end of his vehicle. The officer testified he was not injured and Appellant "was not coming after" him because Appellant was attempting to leave. *Id*. The defendant asserted on appeal that his felonious assault conviction was based on insufficient evidence and against the manifest weight of the evidence.

**{¶53}** We agreed with the defendant, finding that the patrol officer provided no testimony showing that the defendant "was aware he would probably strike" the officer with the front of his vehicle while attempting to leave. *Id*. at ¶ 36. We further held that the state failed to produce evidence of the officer's proximity to the vehicle which would have made it likely that the defendant would hit the officer. *Id.*

**{¶54}** The instant case is distinguishable. The State here offered a plethora of evidence establishing the close proximity of Deputy Evans to Appellant. The jury viewed his body camera footage and the body camera footage from the other officers assisting him with placing Appellant in the restraint chair. Deputy Evans also testified to his close proximity to Appellant while attempting to restrain him in the restraint chair, and Deputy Thomas and Sergeant Gorza did as well. (Trial Tr., 38-141, 155-156, 159-166, 220).

**{¶55}** It is noted that some policies were not followed by the officers. The PepperBall was shot directly at Appellant although a 20-foot distance was recommended before firing. (Trial Tr., 174). The officers did not place Appellant in handcuffs or leg irons before placing him in the restraint chair. (Trial Tr., 181, 222, 258). Further, they did not decontaminate Appellant before placing him in the restraint chair. (Trial Tr., 145, 180 187-188, 257).

**{¶56}** Nevertheless, Deputy Evans testified that while Appellant initially sat in the chair without incident, he resisted when Deputy Evans attempted to put his right arm in restraints. (Trial Tr., 155-156). Deputy Evans testified that when Appellant resisted, Appellant pushed his arm into his upper chest and his right fist came up and hit Deputy Evans in the left side of his jaw. (Trial Tr., 155-156). On the body camera footage, Deputy Evans is heard saying that Appellant hit his jaw. (Trial Tr., 166). Deputy Evans further

testified that he sustained a wound to his tongue and a picture was shown to the jury. (Trial Tr., 158). Thus, the jury could observe Deputy Evans' close proximity to Appellant and he explained why he was so close.

**{¶57}** Further, whether Appellant actually intended to hit Deputy Evans is not relevant, as the statute provides that "[a] person acts knowingly, regardless of purpose." R.C. 2901.22(B). The testimony established that due to his close proximity to Deputy Evans, Appellant was aware that forcefully raising his fist in resisting Deputy Evans would probably cause him to hit Deputy Evans.

**{¶58}** Based on these same reasons, Appellant's manifest weight of the evidence assertion also fails. The jury chose to believe the testimony of the deputies and the body camera footage.

**{¶59}** For these reasons, Appellant's second assignment of error lacks merit and is overruled.

**{¶60}** In his third assignment of error, Appellant asserts:

**Trial counsel was ineffective by failing to object to the erroneous jury instructions in violation of Mr. Vinka's right to effective assistance of counsel and due process of law under US Con. Amend. V, US Con. Amend. VI, US Con. Amend. XIV, and Ohio Con. Art. I. Tr. Passim.**

**{¶61}** Appellant contends that his counsel was ineffective for failing to object to the jury instructions charging them to acquit him if the State failed to prove "all" elements of the offenses, rather than "any" of the elements of the offenses. He submits that if we find that the jury instruction errors were waived due to a failure to object, then his counsel was ineffective for failing to object to them.

**{¶62}** A claim of ineffective assistance of counsel requires a showing of both deficient performance and resulting prejudice. *Strickland v. Washington*, 466 U.S. 668, 687, (1984). If one prong of the *Strickland* test fails, the Court need not consider the other. *State v. Madrigal*, 2000-Ohio-448, ¶ 15.

**{¶63}** To show deficient performance, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *State v. Bradley,* 42 Ohio St.3d 136, 142 (1989), citing *Strickland* at 687-688. Our review is highly deferential

Case No. 25 BE 0002

to counsel's decisions because of the strong presumption that counsel's conduct fell within the wide range of what would be considered reasonable professional assistance. *Id*. There are "countless ways to provide effective assistance in any given case." *Id*. To show resulting prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

{¶64} Based upon our holding that Appellant's first assignment of error lacks merit, trial counsel was not deficient by failing to object to the jury instruction. *See Wilks*, 2018-Ohio-1562, at ¶ 125; *Remillard*, 2019-Ohio-3545, at ¶ 44 (5th Dist.). Moreover, even if the instruction was ambiguous, Appellant has not shown prejudice in the way of jury confusion resulting from the instructions. He therefore cannot show prejudice resulting from any error that counsel may have made by failing to object to the instructions.

{¶65} Accordingly, Appellant's third assignment of error lacks merit and is overruled.

{¶66} In his fourth assignment of error, Appellant asserts:

**Mr. Vinka's maximum sentence was contrary to law, not supported by the record, an abuse of discretion, and, cruel and unusual punishment under US Con. Amend. VIII, US Con. Amend. XIV, and Ohio Con. Art. I. Str. Passim**.

{¶67} Appellant contends his sentence constitutes cruel and unusual punishment because he was given the maximum sentence even though he caused no physical harm to Deputy Evans. He argues the sentence was not proportionate to the offense when all he did was raise his arm and make accidental contact with Deputy Evans. He further asserts that his sentence is unlawful because the State failed to overcome that presumption that he receive probation. He also submits that the State failed to overcome the presumption against imposing the maximum sentence and the court failed to make findings about the facts or the seriousness of the offense.

**{¶68}** When reviewing a felony sentence, an appellate court must uphold the sentence unless the evidence clearly and convincingly does not support the trial court's findings under the applicable sentencing statutes or the sentence is otherwise contrary to law. *State v. Marcum*, 2016-Ohio-1002, ¶ 1. The sentence imposed by the court here was within the proper range for a fifth degree felony. R.C. 2929.14 (A)(5). A sentence that is within the range of the statute cannot amount to cruel and unusual punishment. *State v. Hairston*, 2008-Ohio-2338, ¶ 23. Thus, Appellant's assertion of cruel and unusual punishment lacks merit.

**{¶69}** Moreover, the trial court indicated at both the sentencing hearing and in its sentencing entry that it considered the appropriate statutes. R.C. 2929.11 outlines the overriding purposes of felony sentencing as protecting the public from future crime by the offender, punishing the offender, and promoting rehabilitation of the offender using minimum sanctions without a burden to the state. The statute directs the court to accomplish these purposes by considering "the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both." R.C. 2929.11(A). The court must also impose a felony sentence that is "reasonably calculated" to accomplish the purposes prescribed in R.C. 2929.11(A) and to do so in a manner that is "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentencings imposed for similar crimes committed by similar offenders." R.C. 2929.11(B).

**{¶70}** R.C. 2929.12(B) and (C) outline factors that a court must consider in determining whether the offender's conduct is more serious or less serious than conduct that normally constitutes the offense. R.C. 2929.12(A). R.C. 2929.12(D) and (E) require the trial court to consider specified factors to determine whether the offender is likely to reoffend. These factors include whether at the time of the committed offense, the offender had not been convicted of a criminal offense, whether the offender was previously adjudicated a delinquent child, and whether the offender had led a law-abiding life for a significant number of years. R.C. 2929.12(D)(E).

**{¶71}** The trial court specifically stated at the sentencing hearing and in its sentencing entry that it considered R.C. 2929.11. (Sent. Hg. Tr., 7; Sent. Entry, 1). The

court further indicated that it considered R.C. 2929.12, R.C. 2929.13, R.C. 2929.14, and R.C. 2929.34 and the sanctions pursuant to R.C. 2929.13 through 2929.18. At the sentencing hearing, the court referred to Appellant's 17 juvenile adjudications and his 26 convictions as an adult, including felony convictions for domestic violence, theft of a firearm, and burglary. (Sent. Tr., 5). The court also noted at both the hearing and in the sentencing entry that Appellant had an active warrant in another jurisdiction, he had not responded well to prior sanctions imposed, and he committed the instant offense while incarcerated for another offense. (Sent Tr., 9-10; Sent. Entry, 2).

{¶72} Finally, the court stated that a community control sanction or combination of a minimum sentence with community control would not accomplish the purposes of the sentencing statutes. (Sent. Tr., 10-11; Sent. Entry, 2). The court found no additional mitigating factors that would suggest recidivism was less likely and Appellant had prior prison terms and a prior offense of violence. (Sent. Tr. 10; Sent. Entry, 2).

{¶73} These findings establish that the trial court considered the felony sentencing statutes and considered the relevant statute in imposing the maximum sentence. We cannot find that the evidence clearly and convincingly does not support the trial court's findings under the applicable sentencing statutes or that the sentence is otherwise contrary to law.

{¶74} For the above reasons, we find that Appellant's fourth assignment of error lacks merit and is overruled.

{¶75} In sum, we find that all four of Appellant's assignments of error lack merit and are overruled. We therefore affirm the trial court's conviction and sentence.

Waite, J., concurs.

Dickey, J., concurs.

Case No. 25 BE 0002

—————————————

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed. Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**